## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

KEITH JONES,                                  )
                                              )
                    Plaintiff,                )
                                              )        CIVIL ACTION
v.                                            )
                                              )        No. 05-2034-KHV
UNITED PARCEL SERVICE, INC.,                  )
                                              )
                    Defendant.                )
_____)

### MEMORANDUM AND ORDER AND ORDER TO SHOW CAUSE

Keith Jones filed suit against his former employer, United Parcel Service, Inc. ("UPS"), alleging disability discrimination, failure to accommodate, pattern and practice discrimination and retaliation, in violation of the Americans With Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq*., and retaliatory discharge, in violation of Kansas common law. This matter is before the Court on United Parcel Service, Inc.'s Motion To Dismiss And/Or For Summary Judgment (Doc. #89) filed November 10, 2005 and Plaintiff's Motion For Partial Summary Judgment (Doc. #94) filed November 11, 2005. For reasons set forth below, defendant's motion is sustained in part and plaintiff's motion is sustained in part.

### Summary Judgment Standards

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c); accord Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); Vitkus v. Beatrice Co., 11 F.3d 1535, 1538-39 (10th Cir. 1993). A factual dispute is "material" only if it "might affect the outcome of the suit under the governing

law." <u>Anderson</u>, 477 U.S. at 248.  A "genuine" factual dispute requires more than a mere scintilla of evidence.  <u>Id.</u> at 252.

The moving party bears the initial burden of showing the absence of any genuine issue of material fact.  See <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986); <u>Hicks v. City of Watonga, Okla.</u>, 942 F.2d 737, 743 (10th Cir. 1991).  Once the moving party meets its burden, the burden shifts to the nonmoving party to demonstrate that genuine issues remain for trial "as to those dispositive matters for which it carries the burden of proof."  <u>Applied Genetics Int'l, Inc. v. First Affiliated Secs., Inc.</u>, 912 F.2d 1238, 1241 (10th Cir. 1990); <u>see also</u> <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586-87 (1986); <u>Bacchus Indus., Inc. v. Arvin Indus., Inc.</u>, 939 F.2d 887, 891 (10th Cir. 1991).  The nonmoving party may not rest on his pleadings but must set forth specific facts.  <u>Applied Genetics</u>, 912 F.2d at 1241.

The Court must view the record in a light most favorable to the party opposing summary judgment.  <u>See</u> <u>Deepwater Invs., Ltd. v. Jackson Hole Ski Corp.</u>, 938 F.2d 1105, 1110 (10th Cir. 1991).  Summary judgment may be granted if the nonmoving party's evidence is merely colorable or is not significantly probative.  <u>See</u> <u>Anderson</u>, 477 U.S. at 250-51.  "In a response to a motion for summary judgment, a party cannot rest on ignorance of facts, on speculation, or on suspicion, and may not escape summary judgment in the mere hope that something will turn up at trial."  <u>Conaway v. Smith</u>, 853 F.2d 789, 794 (10th Cir. 1988).  Essentially, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  <u>Anderson</u>, 477 U.S. at 251-52.

**Factual Background**

2

The following facts are deemed admitted.

Plaintiff worked for defendant as a package car driver at the James Street facility in Kansas City, Kansas. Plaintiff's job duties included picking up and delivering packages to UPS customers along a prescribed route. According to defendant's Essential Job Functions, a package car driver must be able to perform the following:

> Lift, lower, push, pull, leverage and manipulate equipment and/or packages up to 130 inches combined length and girth, and up to 48 inches long, and occasionally weighing up to 70 pounds, average weight of 12 pounds.

Exhibit B to United Parcel Service, Inc.'s Memorandum Of Law In Support Of Its Motion To Dismiss Plaintiff's Claims Brought Pursuant To The ADA And/Or For Summary Judgment On All Counts Of Plaintiff's First Amended Complaint ("Defendant's Memorandum") (Doc. #89) filed November 11, 2005.

The International Brotherhood of Teamsters Local Union No. 41 ("Local 41") serves as the bargaining representative for certain UPS employees, including package car drivers, at the James Street facility. Defendant and Local 41 were parties to a collective bargaining agreement ("CBA") during the relevant time period. Plaintiff belonged to Local 41. Article 20 of the CBA contained the following provisions:

> Section 2. Return to Work Examination
> It is understood by the Employer and the Union that once an employee notifies the Employer that he/she has been released to return to work by the employee's doctor, the Company doctor must examine the employee within three (3) working days from the time the employee brings the return-to-work slip to the Employer.

> Section 3. Third Doctor Procedure
> The Employer reserves the right to select its own medical examiner or doctor and the Union may, if it believes an injustice has been done an employee, have said employee re-examined at the employee's expense. If the two (2) doctors disagree, the Employer and the Union shall mutually agree upon a third (3rd) doctor within ten (10) working days,

whose decision shall be final and binding on the Employer, the Union and the employee. Neither the Employer nor the Union will attempt to circumvent the decisions of the third (3rd) doctor and the expense of the third doctor shall be equally divided between the Employer and the Union.

Exhibit F to Defendant's Memorandum (Doc. #89).  The CBA states that the parties agree to abide by the ADA.  The CBA did not require plaintiff to waive his right to sue for disability discrimination under the ADA, and filing a grievance under the CBA does not waive a plaintiff's right to bring ADA claims.

Before October 6, 2003, plaintiff suffered workplace injuries at UPS.  He filed workers' compensation claims as a result of those injuries, but later returned to work.  On October 6, 2003, plaintiff injured his left shoulder at work.  That same day, plaintiff reported the injury to his supervisor, Anson Wallace.  Wallace asked plaintiff if he "knew what work comp fraud was" and if he knew "how much this was going to cost UPS."  Deposition of Keith Jones, Exhibit A to Defendant's Memorandum (Doc. #89) at 22.  Defendant provided information regarding the injury to its workers' compensation insurer, Liberty Mutual.  Plaintiff filed a workers' compensation claim relating to his shoulder injury.

That same day, Dr. Gary Legler examined plaintiff.  Dr. Legler released plaintiff to return to modified duty with the following restrictions: lifting/lowering up to 20 pounds; push/pull/grasp up to 20 pounds; and no lifting above shoulder level.

On October 9, 2003, Dr. Legler referred plaintiff to Dr. Daniel J. Stechschulte.  Dr. Stechschulte saw plaintiff on October 14 and 21 and November 11 and 20, 2003.  Plaintiff received physical therapy at Spine and Extremity Rehabilitation Center from October 8 through December 4, 2003.  On November 11, 2003, Dr. Stechschulte recommended a functional capacity exam ("FCE").  That same day Bob Mitchell, a physical therapist, performed the FCE and found as follows:

4

> This client was cooperative [and] attempted all tasks he was asked to perform. This client continues to report significant left shoulder pain that worsens with lifting and repetitive activity. Objective assessment shows mild to moderate musculoskeletal dysfunction with no sign of motor neurological disturbances detected. Weakness of the left shoulder girdle in comparison to the right is noted. AROM of the left glenohumeral joint shows moderate deficit in comparison to the right. Functionally this client has demonstrated the ability to perform Heavy labor according to the Dictionary of Occupational Titles. Although this client performs well when lifting from the floor he does not posses[s] the ability to perform the required essential functions of his job as a Package Car Driver with UPS. This client lacks lifting strength from waist to shoulder and repetitive lifting capability in the same range.

Exhibit Q to Defendant's Memorandum (Doc. #89). Plaintiff returned to temporary alternative work through November 14, 2003.

On December 4, 2003, plaintiff had another FCE and saw Dr. Stechschulte. Dr. Stechschulte's report reflects that "[p]atient reports continued improvement but 'the shoulder is still not right.'" Exhibit S to Defendant's Memorandum (Doc. #89). Dr. Stechschulte released plaintiff with a permanent 20-pound overhead lifting restriction and a 45-pound chest-to-shoulder lifting restriction with the left upper extremity. Plaintiff gave a copy of Dr. Stechschulte's work status report to Wallace and UPS Labor Manager Don Lewick. Defendant did not permit plaintiff to return to work after Dr. Stechschulte imposed the permanent lifting restrictions.

Plaintiff advised Clint Long, Local 41 Business Agent, that he had permanent work restrictions.[1] Long recommended that plaintiff see another doctor. On February 3, 2004, Dr. Michael Poppa examined plaintiff and gave him a release to return to work with regular duties. Plaintiff presented the release to Wallace and Long. Long advised plaintiff to contact defendant's human resources office and ask about

---

[1]     The record does not reflect when plaintiff contacted Long.

seeing a company doctor to obtain a release to return to work.  Plaintiff set an appointment to see Dr. Legler.

On February 9, 2004, Dr. Legler examined plaintiff.  Plaintiff gave Dr. Legler a copy of the release from Dr. Poppa, but did not discuss with Dr. Legler the results from the FCEs in November and December or Dr. Stechschulte's permanent restrictions.  Dr. Legler gave plaintiff a work status report which released him to return to work.  That same day, Monica Sloan, Kansas District Occupational Health Manager for UPS, contacted Dr. Legler about the work status report.  Sloan asked Dr. Legler if he knew that Dr. Stechschulte had placed permanent lifting restrictions on plaintiff.  Dr. Legler changed his recommendation and imposed a restriction of "20 lb. overhead lift limit per ortho."  Exhibit Y to Defendant's Memorandum (Doc. #89).   At the time Dr. Legler spoke with Sloan, and when he revised his recommendation, he did not have a copy of plaintiff's records from Dr. Stechschulte.  Based on these restrictions, however, defendant again refused to let plaintiff return to work.

On February 10, 2004, plaintiff filed a grievance which stated that "the company is not allowing me to return to work after being released by my personal physician and by the companies."  Exhibit Z to Defendant's Memorandum (Doc. #89).  Plaintiff requested "to be made whole in every way for 2-9-04 and continuing until allowed to return to work."  Id.  On April 29, 2004, the Mo-Kan panel which heard the grievance ruled on plaintiff's grievance, directing the parties to abide by Article 20, section 3 of the CBA.  The record does not explain what the Mo-Kan panel is.  Apparently, it settles grievances between UPS and the union. Defendant and plaintiff's union, Local No. 41 of the International Brotherhood of Teamsters, selected Dr. Frederick A. Buck as the third doctor to see plaintiff.

On May 5, 2004, Janet Keating, Senior Case Manager with Liberty Mutual, sent an e-mail to

Kevin Rhine, UPS Case Manager, in reference to plaintiff. Keating's e-mail stated "we need to settle this because we can't take this guy back." Exhibit 23 to Plaintiff Keith Jones' Memorandum In Response To United Parcel Service, Inc.'s Motion To Dismiss Plaintiff's Claims Brought Pursuant To The ADA And/Or For Summary Judgment On All Counts Of Plaintiff's First Amended Complaint ("Plaintiff's Response") (Doc. #101).

> On May 21, 2004, Dr. Buck examined plaintiff. Dr. Buck's report states in part as follows:

> Upon examination patient was noted to be a well-developed male with what appeared to be full range of motion on abduction, abduction [sic], and forward flexion. His grip strength: is essentially normal in positions 2 and 3 with 3 efforts each averaging respectively: 2 positions 121.6 lbs. and 3 position 103.3 lbs. This examination was performed on a non-replicating examination without extrapolation over a 9.5 hour day which would alter the above findings. * * *

> It should be noted that this employee is carrying restrictions which are permanent of no lifting overhead greater than 20 lbs., maximum 45 lb. chest the [sic] shoulder lift with left upper extremity. These are provided by the orthopedic specialist, Dr. Stechschulte. To substantiate and support the previously noted restrictions was a Functional Capacity Examination performed by Bob Mitchell, PT, on Mr. Jones, dated 12/4/03. It is Mr. Mitchell's opinion that although the patient with [sic] the ability to perform work in a heavy classification according to the United States for Labor [sic], it does not meet the essential functions of a package car driver UPS, as the job has been previously noted, I would concur with this statement per the findings of the Functional Capacity Examination.

> Per the material provided including medical records from Dr. Stechschulte office notes, Dr. Gary Legler's clinic notes . . ., and the Functional Capacity Examination from Spine Extremity Rehabilitation Center, and Essential Job Functions provided by UPS as a basis for my determination. It is my professional medical opinion that the job essentials its [sic] UPS are beyond the scope of this client's permanent restrictions and results provided by the Functional Capacity Examination.

Exhibit CC to Defendant's Memorandum (Doc. #89). Dr. Buck did not perform an FCE because Sloan advised him that one had been performed in December of 2003, that defendant would not pay for another one and that Sloan did not believe another FCE was necessary. Dr. Buck testified that Sloan told him that

the union and UPS agreed that he was to base his opinion on plaintiff's medical records, not on his examination. Dr. Buck also testified that even if he had ordered an FCE, the results would not be sufficient to alter Dr. Stechschulte's prior lifting restrictions because with Dr. Stechschulte's expertise and credentials, his restrictions superseded Dr. Buck's opinion. Defendant therefore again refused to let plaintiff return to work.

On June 1, 2004, plaintiff filed a second grievance, which set forth the following complaint:

Unfair third doctor procedure – On 5/12/04 3rd Doctor, Dr. Frederick A. Buck examined me in his office [and] told me that I showed good strength and wanted me to take a (FCT) Functional Capasity Text [sic]. Dr. Buck called me and said that UPS didn't want me to have another (FCT) and that UPS didn't want Dr. Buck's opinion on his evaluation of my examination. All they want was his opinion on Dr. related to the Company and didn't have all the information from Company Drs.

Exhibit DD to Defendant's Memorandum (Doc. #89). Plaintiff requested back pay, benefits, future benefits and information on his work status. The Mo-Kan panel heard plaintiff's grievance on June 23, 2004 and ordered the parties to repeat the third doctor procedure. On August 17, 2004, Dr. Buck saw plaintiff again but did not perform a physical examination or FCE. Dr. Buck reported in part as follows:

It should be understood that there was no additional information, regarding test or outside evaluating [sic] provided at this time. In essence, there has been no change in patient's ability to perform his duties at work. * * *
The patient[']s present and acceptable restrictions which are permanent of no lifting overhead greater than 20 lbs. maximum lifting to chest level is 45 lbs. with left upper extremity. These restrictions were written by orthopedic specialist, Dr. Stechschulte. * * *
In again reviewing the medical record office notes of Dr. Stechschlte [sic], Dr. Gary Legler, The Functional Capacity Examination from the Spine Extremity Rehabilitation Center, it is my professional opinion with a medical degree of certainty that the essentials of U.P.S. package car driver referred are beyond the scope of this patient's permanent restrictions. Although, this is the opinion previously given the records were reviewed again extensively, and were again providing the same conclusion.

8

Exhibit FF to Defendant's Memorandum (Doc. #89).

After plaintiff's shoulder injury on October 6, 2003, defendant did not discuss with him his rights under the ADA, whether he might be considered disabled under the ADA, whether he was entitled to a reasonable accommodation or whether he would be able to work at other jobs at UPS. At the time of the injury on October 6, 2003, defendant knew that plaintiff had sustained previous work-related injuries and had taken time off for those injuries. UPS has a ten-step process to resolve requests for accommodation by current employees.[2] Defendant did not determine whether plaintiff was seeking an accommodation, and it did not utilize its 10-step ADA compliance procedure with plaintiff. Since October 6, 2003, defendant has had job openings at its facilities in Kansas City (James Street) and/or Lenexa, Kansas. Since February 9, 2004, defendant has never contacted Teamsters Local Union No. 41 or told plaintiff about positions for which he was eligible and could perform the essential functions. Since Dr. Stechschulte placed permanent lifting restrictions upon plaintiff, defendant has not permitted him to work in any position at UPS.

Plaintiff testified that his shoulder injury does not limit any of his activities, that he is capable of performing his former position as a package car driver, that he can perform work around the house, and that he can cook and take care of himself.

On February 27, 2004, plaintiff completed an initial Intake Questionnaire with the Equal

_____

[2]       The steps are as follows: (1) commence the process; (2) gather medical information; (3) evaluate whether the employee may have a disability; (4) notify the employee; (5) meet with the employee; (6) identify potential reasonable accommodations (complete written checklist); (7) evaluate appropriate accommodations (ADA Committee meets); (8) bargain with the union (when an accommodation is identified for a union employee); (9) notify the employee; and (10) close the file. Exhibit 29 to Memorandum In Support Plaintiff Keith Jones' Motion For Partial Summary Judgment ("Plaintiff's Memorandum") (Doc. #95) filed November 11, 2005 at 42-43.

Employment Opportunity Commission ("EEOC"), alleging that defendant had discriminated against him because of his disability.[3]  Plaintiff signed the form in the box which stated "I declare under the penalty of perjury that the information provided in this questionnaire is true and correct."  Exhibit II to Defendant's Memorandum (Doc. #89).  Plaintiff also signed an EEOC document entitled "How to Seek Assistance," which advised him that he could contact Balford Redd, an EEOC Investigative Assistant, for help in completing the Intake Questionnaire.  Plaintiff alleged the following discriminatory actions:

> Injured on 10/6/03 On 12-4-03 Dr. Stechschulte placed permanent restriction on me, On 2-3-04 Dr. Michael J. Poppa release[d] me to return to full duty.  On 2-9-94 Dr. Legler release[d] me to return to full duty after UPS contacted Dr. Legler, Dr. Legler changed restriction on 2/9/04.

Id.  On the second page of the questionnaire, under the question "Do you think this happened to you because of your," plaintiff checked the following boxes: race, color and age (40 & over).  The third page of the questionnaire asked "Why do you feel that the personnel action or other discrimination you have experienced was because of your race, color, sex, religion, national origin, pregnancy, age or disability?"  Plaintiff responded, "Because of the way everything happened."  Id.  The next question asked, "Are you aware of statements made by management officials showing prejudice toward you for any of the following reasons," and plaintiff checked the following boxes: race, age, disability and retaliation. On the section of the questionnaire labeled "Disability," plaintiff described his impairment as "[p]roblem sleeping due to the situation I'm in."  Plaintiff checked "no" next to the questions "Do you believe that the employer regarded you as disabled?" and "Did you advise your employer that you needed an accommodation?"  Plaintiff did

---

[3]        Plaintiff also alleged discrimination based on race, color and age, but he has dropped those claims.

not complete the section of the questionnaire labeled "Retaliation."

On March 2, 2004, the EEOC received plaintiff's questionnaire.  On March 3, 2004, the EEOC

sent plaintiff a letter which stated that "[t]he information you submitted has not been filed as a charge."

Exhibit JJ to Defendant's Memorandum (Doc. #89).  The letter also stated as follows:

> Your documentation indicates that you believe you were discriminated against due to your race/color (Black), age (forty-one), disability, and as a form of retaliation.  Your documents further indicated that your medical restrictions were changed after UPS contacted a doctor.  You failed to provide sufficient information to identify your current status.
>
> The Commission is responsible for enforcement of the Americans With Disabilities Act (ADA).  The ADA prohibits discrimination against individual[s] who have a "disability."  For purposes of that law, a disability is defined as a physical or mental impairment which substantially limits one or more major life activities.  However, the ADA only applies to conditions which are permanent, chronic, or long-term.  The documentation you provided, however, does not demonstrate that your condition represents a disability for purposes of the ADA.  There is no evidence that your condition will be permanent and the limitations placed upon you on February 9, 2004 are not substantial limitations to a major life activity (twenty pound overheard [sic] lifting limitation).  Therefore, your treatment does not violate the ADA and your condition does not represent a disability for purposes of Commission jurisdiction.  Action taken against you would also not represent a form of retaliation under any law for which we have enforcement authority.

Id.  Finally, the letter requested that plaintiff provide additional information regarding his current

employment status with defendant, other drivers treated more favorably and other drivers reassigned to

another job to accommodate a temporary medical disability.   See id.  Plaintiff provided the following

response:

> My current status with UPS is that UPS will not allow me to return to work.  On 2/9/04 when I was discharged to return to work full duty 2/10/04 Anson Wallace (Center Manager) instructed me not to come to UPS and that I should call Klint Long (Union Agent).  I asked Anson Wallace if he recieved [sic] my Work Status Report he said "yes".  I said than [sic] I'm coming to work and that you are going to have to send me home and you will have to pay me for the time off.  Anson said you are not to come down to UPS

11

and that he was not going to paid [sic] me anything[.]  I called Klint Long to see what was going on[.]  Klint said that Monica Sloan (UPS) recieved [sic] some paper from Dr. Daniel Stechschulte and that she (Monica Sloan) called Dr. Legler to have him change his restriction.  I am not allow[ed] to return to work.

Exhibit KK to Defendant's Memorandum (Doc. #89).  On March 26, 2004, Rick Thomas, EEOC Senior

Investigator, sent plaintiff a letter which stated as follows:

> This letter will advise you I have received the documentation you submitted to the [EEOC], including the supplemental materials you provided to the intake investigator.  Those materials have not been filed as a charge.  You have 180 days (in Missouri) and 6 months (in Kansas) from the date of the event that you allege is discriminatory to file a charge to protect your rights under state law, and you must file within 300 days from that date to protect your rights under federal law.
>
> You did not fully respond to the questions in the letter sent to you by the intake investigator.  However, your materials indicate you were diagnosed with a shoulder strain/tear which resulted in temporary lifting restrictions.  You later went through a series of lifting tests which indic[a]ted you were able to lift in excess of 70 pounds without assistance and were initially released to return to work, however another physician placed permanent restrictions on you, and the employer used that information as the basis for a determination that you are unable to perform the functions of your position.  You have not been allowed to return to work.
>
> While the conduct you describe on the employer's part suggests potential unfairness, your information does not indicate you have a covered "disability" under the Americans with Disabilities Act.  Under such circumstances, should you choose to file a charge, it is likely the case would immediately be closed.
>
> If you wish to discuss this matter or believe I have misinterpreted your information, feel free to contact me . . . .  If you do not establish contact with me within 7 days of the date of this letter, the information you submitted will be placed in an inquiry file and will not be further processed.

Exhibit LL to Defendant's Memorandum (Doc. #89).  Plaintiff testified that he did not recall asking the

EEOC to consider his questionnaire as a charge.  See Exhibit A to Defendant's Memorandum (Doc. #89)

at 252.

The Intake Questionnaire expressly states that "[w]hen this form constitutes the only timely written statement of allegations of employment discrimination, the Commission will, consistent with 29 C.F.R. § 1601.12(b) and 29 C.F.R. § 1626.8(b), consider it to be a sufficient charge of discrimination under the relevant statute(s)." Exhibit II to Defendant's Memorandum (Doc. #89).   According to Thomas, the EEOC considered the questionnaire as plaintiff's related charge of discrimination and recognized it as Charge No. 281-2004-03088.  Affidavit of Rick Thomas, Exhibit 4 to Plaintiff Keith Jones' Memorandum In Response To United Parcel Service, Inc.'s Motion To Dismiss Plaintiff's Claims Brought Pursuant To The ADA And/Or For Summary Judgment On All Counts Of Plaintiff's First Amended Complaint ("Plaintiff's Response") (Doc. #101) at ¶¶ 6-7.  On October 27, 2004, the EEOC issued a dismissal and right-to-sue letter which stated that "the EEOC is unable to conclude that the information obtained establishes violations of the statutes."  Exhibit 4 to Plaintiff's Memorandum (Doc. #95).  Prior to receipt of this letter, defendant had not received notice of plaintiff's discrimination claims.

Plaintiff filed suit on January 24, 2005, within 90 days of receipt of the right-to-sue letter.  Plaintiff asserts claims for discrimination, failure to accommodate, unlawful retaliation and wrongful discharge under the ADA and Kansas common law.  Defendant argues that the Court should dismiss plaintiff's claims because he did not exhaust his administrative remedies.  In the alternative, defendant contends that it is entitled to summary judgment because (1) plaintiff cannot demonstrate a prima facie case of discrimination based on disability; (2) on his retaliation claim, plaintiff cannot show that he engaged in a protected activity or that a causal connection exists between the grievance and defendant's conduct; (3) plaintiff's pattern or practice theory is not available to him as a private, non-class litigant; (4) on plaintiff's state law retaliation claim, he cannot show a causal connection between his injury and defendant's decision not to reinstate him;

(5) plaintiff cannot show pretext on his state law retaliation claim; and (6) Section 301 of the Labor

Management Relations Act ("LMRA"), 29 U.S.C. § 185(a), pre-empts plaintiff's claims.  Plaintiff argues

that he is entitled to partial summary judgment because (1) he timely filed a verified intake questionnaire;

(2) the LMRA does not preempt his claims because he does not allege a violation of the CBA and no

interpretation of the CBA is required to resolve his claims; (3) defendant regarded or perceived him as

disabled; (4) defendant failed to engage in the required good faith interactive process of the ADA; and

(5) defendant's "100% healed" policy is a *per se* violation of the ADA.

**Analysis**

**I.**     **Exhaustion Of Remedies**

       Defendant argues that plaintiff has not exhausted administrative remedies because (1) he did not

file a charge of discrimination with the EEOC; (2) he did not cooperate with EEOC efforts to investigate

his intake questionnaire; and (3) his claims of perceived disability discrimination, failure to accommodate,

pattern or practice and retaliation fall beyond the scope of his allegations on the intake questionnaire.

Plaintiff argues that he is entitled to summary judgment on the issue of exhaustion because his intake

questionnaire sets forth sufficient information to constitute a charge under 29 C.F.R. § 1601.12(a) and (b),

he cooperated with the EEOC in the investigation and he presented all claims to the EEOC.

**A.**     **No Charge Filed**

       Before a federal court may exercise jurisdiction over plaintiff's ADA claims, he must first exhaust

his EEOC administrative remedies.  MacKenzie v. City & County of Denver, 414 F.3d 1266, 1274 (10th

Cir. 2005). Defendant argues that because plaintiff never filed a charge of discrimination, he did not exhaust

administrative remedies.  Defendant also argues that it did not receive notice of plaintiff's claims until it

14

received a copy of the right-to-sue letter and that plaintiff's intake questionnaire therefore cannot be construed as a charge.

Defendant contends that the Tenth Circuit has held that an intake questionnaire cannot substitute for a charge, citing Welsh v. City of Shawnee, 182 F.3d 934, 1999 WL 345597 (10th Cir. 1999). In Welsh, plaintiff filed an unverified information sheet before she filed her formal charge. Id. at *5. The information sheet expressly stated that it was not a charge of discrimination. Id. Plaintiff's information sheet included allegations of harassment, but the later filed formal charge did not allege harassment. Id. The Tenth Circuit determined that the formal charge, filed under oath, negated the information sheet. Id.

Plaintiff cites two different Tenth Circuit cases in support of his position. In both cases, however, plaintiff filed a formal charge. See Gunnell v. Utah Valley State Coll., 152 F.3d 1253 (10th Cir. 1998) (later-filed supplement to charge sufficient notice of allegations not included in original charge); Peterson v. City of Wichita, Kan., 888 F.2d 1307 (10th Cir. 1989) (verified but untimely charge related back to unverified but timely filing). The Tenth Circuit has not addressed whether an intake questionnaire can serve as a charge when no formal charge of discrimination is ever filed.

In determining whether claims have been adequately presented to the EEOC, other circuits have considered documents other than the formal EEOC charge, including the intake questionnaire. See, e.g., Wilkerson v. Grinnell Corp., 270 F.3d 1314 (11th Cir. 2001) (verified intake questionnaire which included basic information under 29 C.F.R. §1601.12(a) constituted charge); Lawrence v. Cooper Cmtys., Inc., 132 F.3d 447 (8th Cir. 1998) (where EEOC misled plaintiff into believing that submission of timely pre-charge document with subsequent verification would suffice, pre-charge document sufficient); Diez v. Minn. Mining & Mfg. Co., 88 F.3d 672, 675-76 (8th Cir. 1996) (when EEOC or FEP agency treats

intake questionnaire as complaint, notifies employer of it and acts on it, pre-charge document sufficient); Philbin v. Gen. Elec. Capital Auto Lease, Inc., 929 F.2d 321 (7th Cir. 1991) (timely-filed intake questionnaire treated as timely-filed charge when EEOC treated it as charge and employer received notification of charge). In determining whether the intake questionnaire serves as a charge, the Seventh, Eighth and Eleventh Circuits have considered relevant facts such as (1) what plaintiff and EEOC personnel said to each other; (2) what the questionnaire indicated; and (3) how the EEOC responded to the questionnaire. See Wilkerson, 270 F.3d at 1320 (list not exhaustive); Diez, 88 F.3d at 675; Steffen v. Meridian Life Ins. Co., 859 F.2d 534, 544 (7th Cir. 1988).

As to the first factor – what plaintiff and the EEOC discussed – plaintiff alleges that "[t]he EEOC told me that my questionnaire would serve as my related charge of discrimination." Affidavit of Keith L. Jones, Exhibit 5 to Memorandum In Support Of Plaintiff Keith Jones' Motion For Partial Summary Judgment (Doc. #95) filed November 11, 2005, ¶ 4. Defendant disputes plaintiff's affidavit, asserting that the affidavit from Rick Thomas, Senior EEOC Investigator, does not support plaintiff's statement. Thomas' affidavit, however, does not controvert plaintiff's statement. Without indicating what the EEOC told plaintiff, the affidavit states that the EEOC treated the intake questionnaire as a charge. Defendant cites plaintiff's deposition testimony that he did not recall asking the EEOC to consider his questionnaire as a charge. See Exhibit A to Defendant's Memorandum (Doc. #89) at 252. Plaintiff's testimony, however, does not speak directly to what the EEOC told him; therefore it does not contradict his affidavit. Defendant argues that because plaintiff did not ask the EEOC to treat his filing as a charge, he did not manifest an intent for it to be so treated. A submission of a verified intake questionnaire, however, may be an indication that plaintiff intended the EEOC to investigate allegations of discrimination. See Terrell v. McGuire, No.

16

03-4069-SAC, 2003 WL 22213132, at *3 (D. Kan. Aug. 27, 2003).

Defendant points out that the EEOC told plaintiff twice, in written correspondence, that his questionnaire had not been filed as a charge. On the other hand, the language of the questionnaire – the second factor – supports plaintiff's position. The questionnaire itself contains an express statement that if no other written statements are filed, the EEOC will treat it as a charge. Unlike the document in Welsh, the intake questionnaire does not contain any language which states that it does not constitute a charge.

As to the third factor, even though the EEOC apparently never sent defendant a copy of the intake questionnaire, Thomas states that the EEOC in fact treated it as a charge. Defendant argues that because it had no notice of plaintiff's discrimination claims, plaintiff did not exhaust. The Tenth Circuit has clearly stated, however, that a plaintiff should not be penalized for EEOC negligence in handling a claim. Welsh, 182 F.3d 934, 1999 WL 345597, at *5 (citing Diez, 99 F.3d at 677; Philbin, 929 F.2d at 325). Applying the factors set forth in Wilkerson, the Court concludes as a matter of law that plaintiff's questionnaire constitutes a charge of discrimination.

Defendant also relies on Jones v. Roadway Express, Inc., No. CIV.A. 99-2198-GTV, 2000 WL 1114968 (D. Kan. July 17, 2000), and Tillman v. Beaver Express Serv., Inc., No. 89-1326-K, 1991 WL 26936 (D. Kan. Febr. 28, 1991), for the proposition that the intake questionnaire cannot constitute a formal charge because the intake questionnaire is so limited in the information it provides. Defendant, however, ignores the fact that the questionnaire in Jones included only the names and addresses of the parties and a box with an "X" which indicated that plaintiff thought he had been discriminated against. Furthermore, in Jones, the Court acknowledged that some courts have found that an intake questionnaire can serve as a timely charge. 2000 WL 1114968, at *3 n.2. In Tillman, the Court referred to the intake

17

form as "so spartan, so limited in the information it provides, that it really cannot be considered a substitute for a complaint." The opinion, however, does not recite sufficient facts to compare that form with plaintiff's intake questionnaire.

> Under 29 C.F.R. § 1601.12(a), a charge of discrimination should include the following:
>
> (1) The full name, address and telephone number of the person making the charge . . . ;
> (2) The full name and address of the persons against whom the charge is made, if known . . . ;
> (3) A clear and concise statement of the facts, including pertinent dates, constituting the alleged unlawful employment practices . . .;
> (4) If known, the approximate number of employees of the respondent employer or the approximate number of members of the respondent labor organization . . .; and
> (5) A statement disclosing whether proceedings involving the alleged unlawful employment practice have been commenced before a State or local agency charged with the enforcement of fair employment practice laws and, if so, the date of such commencement and the name of the agency.

29 C.F.R. § 1601.12(a). In addition, a charge must be signed and verified. 29 C.F.R. § 1601.9. Here, plaintiff's intake questionnaire included the minimal information required under 29 C.F.R. § 1601.12(a). Plaintiff verified his questionnaire by signing the statement that he declared under penalty of perjury that the information provided was true and correct. As to this issue, the Court overrules defendant's motion to dismiss and grants plaintiff's motion for summary judgment.

### B.    Failure To Cooperate

Defendant next argues that plaintiff did not cooperate with the EEOC investigation and therefore did not exhaust administrative remedies under Shikles v. Sprint/United Management Co., 426 F.3d 1304 (10th Cir. 2005). In Shikles, a plaintiff cancelled three scheduled telephone interviews with the EEOC investigator, did not return the investigator's calls, and did not submit information which the investigator requested. The Tenth Circuit concluded that "the combination indicates the total lack of a good faith effort

at cooperation" and that plaintiff therefore had not exhausted administrative remedies.  Id. at 1317.  The

Tenth Circuit noted as follows:

> While we hold that a private sector employee must cooperate with the EEOC, we
> emphasize that compliance must be judged by commonsense standards.  Perfect
> cooperation with the EEOC is not required.  Rather, a claimant must merely cooperate as
> part of a good faith attempt to allow the EEOC a reasonable opportunity to reach the
> merits of his or her charge. It is only when a plaintiff's non-cooperation effectively prevents
> the EEOC's investigation and conclusion efforts such that the EEOC proceeding essentially
> becomes a sham or meaningless proceeding that a charging party's non-cooperation will
> amount to a failure to exhaust administrative remedies.  Thus, we expect that it will be rare
> for a charging party's non-cooperation to be a basis for the defendant to challenge the
> court's jurisdiction.

Id. at 1311-12.

Here, plaintiff submitted a document in response to the EEOC's first request for additional

information.  Because plaintiff did not address all questions raised by the EEOC, he prompted a second

request.  The record contains no evidence of a written response to the second request.  Plaintiff testified

that he spoke with Thomas by telephone.[4]  The Dismissal and Notice of Rights letter from the EEOC does

not suggest that the EEOC dismissed the case for failure to cooperate.[5]  Instead, in explaining its dismissal,

the EEOC stated that it "is unable to conclude that the information obtained establishes violations of the

statutes."  Exhibit 4 to Plaintiff's Memorandum (Doc. #95).  On these facts, plaintiff's effort to cooperate

falls short of "perfect cooperation" but does not rise to the level of a "total lack of cooperation" found in

Shikles.  As a matter of law, plaintiff did not fail to exhaust his administrative remedies based on his effort

---

[4]     The record does not reflect when this conversation took place.

[5]     The EEOC form letter did not check the box which states "having been given 30 days in
which to respond, you failed to provide information, failed to appear or be available for
interviews/conferences, or otherwise failed to cooperate to the extent that it was not possible to resolve
your charge."  Exhibit 4 to Plaintiff's Memorandum (Doc. #95).

to cooperate in the investigation.  The Court overrules defendant's motion to dismiss and grants plaintiff's motion for summary judgment on this question.

### C.    Scope Of Intake Questionnaire

Defendant next argues that as a matter of law, plaintiff's claims for perceived disability discrimination, failure to accommodate, "pattern or practice" discrimination and retaliation are beyond the scope of his intake questionnaire and therefore barred.

A plaintiff's claim in federal court is limited by the scope of the administrative investigation that can reasonably be expected to follow a charge of discrimination submitted to the EEOC.  MacKenzie, 414 F.3d at 1274.  To avoid frustrating the purposes of the ADA, the Court liberally construes charges of disability discrimination filed with the EEOC.  Foster v. Ruhrpumpen, Inc., 365 F.3d 1191, 1195 (10th Cir. 2004).  The purpose of a charge of discrimination is to notify defendant of the alleged violation and trigger the conciliatory procedures of the EEOC.  See Ingels v. Thiokol Corp., 42 F.3d 616, 625 (10th Cir. 1994), abrogated on other grounds by Martinez v. Potter, 347 F.3d 1208 (10th Cir. 2003).

### 1.    Perceived Disability

Defendant argues that because plaintiff checked "no" next to the box which asked whether he believed that the employer regarded him as disabled, his claim of perceived disability discrimination is outside the scope of his charge.  Plaintiff responds that (1) he completed the form without assistance of counsel, and (2) a perceived disability claim would be expected to grow out of the information within the questionnaire.  Specifically, plaintiff argues that on the form, he stated that he was prejudiced because of a disability and that he tried to return to work with two releases, yet defendant instructed the company doctor to change his recommendation.

Defendant relies on MacKenzie for the proposition that a plaintiff has not exhausted remedies if a specific type of disability is not alleged in the underlying charge. In MacKenzie, plaintiff alleged one disability in the charge (coronary disease) and attempted to add a second disability (depression) on appeal. 414 F.3d at 1274. The Tenth Circuit noted that the second disability exceeded the scope of the charge and refused to consider the argument because plaintiff first raised it on appeal. Id. A plaintiff's failure to mark a box for a particular type of discrimination is not dispositive, but creates a presumption that plaintiff was not asserting claims represented by boxes not checked. Gunnell, 152 F.3d at 1260. The presumption may be rebutted by the text of the claim. Id.; see also Mitchell v. City & County of Denver, 112 Fed. Appx. 662, 667 (10th Cir. 2004).

Here, after the question "Are you aware of statements made by management officials showing prejudice toward you for any of the following reasons," plaintiff checked the box next to "disability." Directly below the question "do you believe that the employer regarded you as disabled," and in response to the question "What happened that leads you to believe that your disability, or being regarded as disabled, was the basis of the employer's action?," plaintiff stated that "after 2-9-04 I found myself under a lot of stress and sleepless nights." Id. at 4. In the narrative portion of plaintiff's intake questionnaire, he described defendant's alleged discriminatory conduct as follows:

> Injured on 10/6/03[.] On 12-4-03 Dr. Stechschulte placed permanent restriction on me, on 2-3-04 Dr. Michael J. Poppa release[d] me to return to full duty. On 2-9-04 D. Legler release[d] me to return to full duty[.] After UPS contacted Dr. Legler, Dr. Legler changed restriction on 2/9/04.

Exhibit II to Defendant's Memorandum (Doc. #89) at 2. Defendant is correct that plaintiff did not expressly profess that his employer viewed him as disabled. The text of plaintiff's statement, however,

should have triggered an inquiry into whether defendant viewed plaintiff as disabled when it refused to return him to work after Dr. Stechschulte imposed permanent restrictions.  Liberally construing the intake questionnaire, the Court finds that an inquiry into perceived disability would reasonably have flowed from plaintiff's statement.

### 2.    Failure To Accommodate

Defendant next contends that because plaintiff did not indicate that he needed an accommodation, he failed to exhaust administrative remedies as to his failure-to-accommodate claim. Plaintiff presumes that a notice of disability discrimination encompasses failure-to-accommodate claims or that investigation of such a claim would reasonably flow from the disability claim.  This is not necessarily so.  See Schmidt v. US West Commn'cs, 3 Fed. Appx. 766, 768 (10th Cir. 2001) (unpublished opinion) (plaintiff who filed charge based on disability did not exhaust accommodation claim).

In response to the question "Did you advise your employer that you needed an accommodation?" plaintiff marked the box "no."  To rebut the presumption that plaintiff did not assert an accommodation claim, the Court looks to the text of plaintiff's charge.  Plaintiff left blank all other questions regarding accommodation.  Like the perceived disability claim, however, an inquiry whether defendant's refusal to reinstate plaintiff constituted a failure to accommodate would reasonably have flowed from plaintiff's description of the discrimination against him.  As a matter of law, plaintiff has exhausted administrative remedies on this claim.  The Court overrules defendant's motion to dismiss and grants plaintiff's motion for summary judgment on this issue.

### 3.    Pattern Or Practice

Defendant argues that plaintiff's allegation of "pattern or practice" discrimination is beyond

22

the scope of his intake questionnaire.  Plaintiff concedes that his intake questionnaire does not contain

specifically worded allegations of pattern or practice discrimination, but contends that because his claim

challenges defendant's 100 per cent release policy, both the EEOC and defendant were on notice that the

complaint would include policy, pattern or practice.  Plaintiff argues that the EEOC knows about

defendant's policy and has repeatedly found that it is a *per se* violation of the ADA.  Plaintiff also argues

that the pending class action litigation in Hohider v. United Parcel Service, Inc., No. 04-0363 (W.D. Pa.),

placed defendant on notice of potential claims.  Plaintiff relies on  Foster, 365 F.3d 1191, for the

proposition that a formal charge is useless when the employer is on notice that plaintiff may file a claim.

Plaintiff misinterprets the law when he assumes that notice of pattern or practice discrimination in

Hohider serves to exhaust his remedies.  Plaintiff must exhaust administrative remedies for each of his own

claims.  Furthermore, nothing in the intake questionnaire suggests that plaintiff is challenging the 100 per

cent release policy – the text of the questionnaire and plaintiff's supplement speak to his specific situation

and do not mention the policy.  Plaintiff focused solely on the facts of his injury and defendant's failure to

return him to work.  Plaintiff's claim for pattern or practice discrimination is beyond the scope of his intake

questionnaire.  See Carpenter v. Gulf States Mfrs., Inc., 764 F. Supp. 427, 436 (N.D. Miss. 1991)

(summary judgment for defendant when the EEOC charge alleged only failure-to-promote and retaliation

claims but did not allege policy and practice of discrimination).  The Court grants defendant's motion to

dismiss and overrules plaintiff's motion for summary judgment on this claim.[6]

### 4.	Retaliation

---

[6]	Defendant also argues that a pattern and practice claim cannot be exhausted through an individual complaint of discrimination.  The Court need not address this argument.

Defendant argues that because plaintiff's intake questionnaire did not mark the box labeled "retaliation," complete the retaliation section, or anywhere allege that plaintiff engaged in protected activity, he did not exhaust administrative remedies. A review of the questionnaire reveals that plaintiff did mark the retaliation box on the third page, even though he did not mark the same box on the second page. Plaintiff properly presented this claim to the EEOC.

In conclusion, as to exhaustion, defendant's motion to dismiss is sustained as to plaintiff's claim of pattern or practice discrimination. The Court finds that as a matter of law, plaintiff exhausted administrative remedies as to his claims based on perceived disability, failure to accommodate and retaliation.

## II.     Pre-emption

Defendant argues that Section 301 of the LMRA, 29 U.S.C. § 185(a), pre-empts plaintiff's claims. Specifically, defendant contends that plaintiff's claims depend on CBA interpretation and that Section 301 therefore pre-empts plaintiff's claims. Plaintiff argues that (1) he did not waive his rights under the ADA, and (2) resolution of his discrimination and retaliation claims does not require interpretation of the CBA.

Section 301 of the LMRA provides:

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a). Section 301 authorizes federal courts "to fashion a body of federal common law to be used to address disputes arising out of labor contracts." Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 209 (1985). Any state law which "purports to define the meaning or scope of a term in a contract suit therefore is pre-empted by federal labor law." Id. Pre-emption does not arise, however, unless analysis

24

of a claim is "inextricably intertwined" with the terms of the CBA.  Id. at 213.  Section 301 does not

preempt a state law claim which can be resolved without interpretation of a CBA.  See Lingle v. Norge

Div. of Magic Chef, Inc., 486 U.S. 399, 410 (1988).

Lingle addresses pre-emption of state law claims.  Here, except for plaintiff's retaliatory discharge

claim under Kansas law, plaintiff presents federal claims.  Defendant relies on unpublished cases for the

argument that the LMRA pre-empts federal causes of action which require interpretation of the CBA.

Defendant first cites Braxton v. Dillon Cos., Inc., 9 Fed. Appx. 919 (10th Cir. 2001).  In Braxton, the

Tenth Circuit found that while plaintiff had filed suit under Title VII, her claims focused on challenges to

defendant's sick leave policy, a forced leave of absence, her work schedule and termination in violation

of defendant's attendance policy.  Plaintiff's complaint alleged termination based on violation of work rules

and company policy.  The Tenth Circuit concluded that plaintiff's brief addressed complaints about an

unemployment hearing and union arbitration proceedings and that the LMRA preempted these issues.  The

Tenth Circuit basically construed plaintiff's claims as state law breach of contract, and not federal

discrimination claims.

Defendant next relies on Keck v. PPL Electric Utilities Corp., 99 Fed. Appx. 357 (3d Cir. 2004).

In Keck, however, the Third Circuit found that plaintiff had no federal claim.  It noted that plaintiff based

his arguments on the CBA and stated that they amounted to classic contract interpretation issues.  The

Third Circuit did not address whether the LMRA preempted any federal claim.  Finally, defendant cites

Beckwith v. Diesel Technology, Co., 215 F.3d 1325, 2000 WL 761808 (6th Cir. 2000), in which the

Sixth Circuit found that the LMRA preempted plaintiffs' state law retaliatory discharge claims because they

required interpretation of the CBA.  These cases do not extend Section 301 pre-emption to claims which

25

arise under federal law.  Pre-emption of state law claims protects against divergent state law interpretations of federal labor law.  <u>Turner v. Jewel Food Stores, Inc.</u>, 2005 WL 3487788, at *2 (N.D. Ill. Dec. 21, 2005).  That concern is alleviated when the cause of action arises under federal law.  <u>Id.</u>  The ADA provides plaintiff with rights under federal law which are independent of the CBA.  Accordingly, plaintiff's ADA claims are not subject to dismissal on grounds of pre-emption.

To determine whether plaintiff's state law claim of retaliatory discharge is inextricably intertwined with the CBA, the Court must look at the elements of the claim.  <u>Lingle</u>, 486 U.S. at 401.  To establish his claim for retaliatory discharge under Kansas law, plaintiff must show that (1) he filed a claim for workers' compensation benefits or sustained an injury for which he might assert a future claim for benefits; (2) defendant knew that plaintiff had filed a workers' compensation claim or sustained a work-related injury for which he might file a claim; (3) plaintiff suffered an adverse employment action; and (4) a causal connection existed between the protected activity or injury and the adverse employment action.  <u>See</u> <u>Sanjuan v. IBP, Inc.</u>, 160 F.3d 1291, 1298 (10th Cir. 1998); <u>Rebarchek v. Farmers Co-op. Elevator</u>, 272 Kan. 546, 554, 35 P.3d 892, 899 (2001).  These elements of retaliatory discharge require a factual inquiry which does not include interpretation of the CBA.  <u>See</u> <u>Mowry v. United Parcel Serv.</u>, 415 F.3d 1149, 1155 (10th Cir. 2005) (litigation of state law retaliatory discharge claim presents purely factual questions pertaining to conduct of employee and conduct and motivation of employer; neither requires a court to interpret any term of a collective-bargaining agreement).  Section 301 of the LMRA does not preempt plaintiff's state retaliatory discharge claims.  <u>See</u> <u>Hysten v. Burlington N. Santa Fe Ry. Co.</u>, 372 F. Supp.2d 1246, 1253 (D. Kan. 2005).  Therefore, defendant's motion to dismiss is overruled.

**III.    Disability Discrimination**

**A.     Prima Facie Case: Disability Discrimination/Failure To Accommodate Claims**

To establish a prima facie case under the ADA, plaintiff must demonstrate that (1) he is disabled within the meaning of the ADA; (2) he is qualified, that is, with or without reasonable accommodation, he is able to perform the essential functions of the job; and (3) defendant discriminated against him because of his disability.  See Pack v. Kmart Corp., 166 F.3d 1300, 1302 (10th Cir. 1999).  The ADA defines "disability" as a physical or mental impairment that substantially limits one or more of the major life activities of such individual; a record of such an impairment; or being regarded as having such am impairment.  42 U.S.C. § 12101(2).  Plaintiff asserts that defendant regarded him as having a disability.

Defendant first argues that because plaintiff cannot show that defendant perceived him as disabled, he cannot establish a prima facie case.  A person is regarded as disabled when (1) a covered entity mistakenly believes that a person has a physical impairment that substantially limits one or more major life activities, or (2) a covered entity mistakenly believes that an actual, nonlimiting impairment substantially limits one or more major life activities.  Lanman v. Johnson County, Kan., 393 F.3d 1151, 1156 (10th Cir. 2004) (quoting Sutton v. United Air Lines, Inc., 527 U.S. 471, 489 (1999)).  "In both cases, it is necessary that a covered entity entertain misperceptions about the individual – it must believe either that one has a substantially limiting impairment that one does not have or that one has a substantially limiting impairment when, in fact, the impairment is not so limiting."  Sutton, 527 U.S. at 489.  In Doebele v. Sprint/United Management Co., the Tenth Circuit specifically addressed the "regarded as disabled" prong:

> These misperceptions often resul[t] from stereotypic assumptions not truly indicative of . . . individual ability.  Congress acknowledged that society's accumulated myths and fears about disability and disease are as handicapping as are the physical limitations that flow from actual impairment.
>
> An individual rejected from a job because of the myths, fears and stereotypes

27

associated with disabilities would be covered under this part of the definition of disability, whether or not the employer's or other covered entity's perception were shared by others . . . and whether or not the individuals' actual physical or mental condition would be considered a disability under the first or second part of this definition.  As the legislative history notes, sociologists have identified common attitudinal barriers that frequently result in employers excluding individuals with disabilities.  These include concerns regarding productivity, safety, insurance, liability, attendance, cost of accommodation and accessibility, workers' compensation costs, and acceptance by coworkers and customers.

342 F.3d 1117, 1133 (10th Cir. 2003) (quotations and citations omitted).  Both lifting and working are major life activities.  See Lanman, 393, F.3d at 1157; Lusk v. Ryder Integrated Logistics, 238 F.3d 1237, 1240 (10th Cir. 2001).

Here, plaintiff argues that defendant mistakenly perceived him as having a physical impairment that substantially limits the major life activities of lifting and working.  Defendant asserts that it based its understanding of plaintiff's medical condition on written medical evaluations which imposed lifting restrictions.  Plaintiff argues that defendant mistakenly believed that he was disabled because the written report from Dr. Poppa and the initial evaluation of Dr. Legler support a finding that he was not disabled.

While reasonable minds might differ as to whether Dr. Stechschulte erred in his assessment, the record conclusively shows that defendant based its perceptions of plaintiff's physical condition on a written evaluation from Dr. Stechschulte.  Later evaluations from Dr. Legler and Dr. Buck supported Dr. Stechschulte's conclusion.  Where recognition of limitations is based on a doctor's written evaluation, defendant's conclusion is not based on myth, stereotype or speculation.  Lusk, 238 F.3d at 1242; see also Sink v. Wal-Mart Stores, Inc., 147 F. Supp.2d 1085, 1095 (D. Kan. 2001) (defendant justified in relying on cardiologist release despite conflict with treating physician's release).

Plaintiff also argues that defendant based its decision on financial concerns regarding insurance and

28

liability, relying on an e-mail from Keating to Rhine which stated "we need to settle this because we can't take this guy back." Without additional evidence, this statement does not demonstrate that defendant had a mistaken belief that plaintiff had a physical impairment which substantially limited a major life activity or a mistaken belief based on myth, fear, or stereotype.

The parties do not dispute that defendant relied on the doctors' evaluations to determine whether plaintiff could return to work. The only basis for finding a genuine issue of material fact to survive summary judgment is that the physicians erred in their assessment of plaintiff. Even if the physician erred, however, plaintiff cannot show that his lifting restrictions substantially limited his major life activities. See, e.g., Marinelli v. City of Erie, Pa., 216 F.3d 354, 363-64 (3d Cir. 2000) (ten-pound lifting restriction not substantially limiting); Huckans v. U.S. Postal Serv., 201 F.3d 448 (10th Cir. 1999) (table) (35-pound lifting restriction not substantially limiting); Williams v. Channel Master Satellite Sys., Inc., 101 F.3d 346, 349 (4th Cir. 1996) (as a matter of law, 25-pound lifting restriction not a significant restriction on ability to lift, work, or perform other major life activity), abrogated on other grounds by Baird v. Rose, 192 F.3d 462 (4th Cir. 1999); Ray v. Glidden Co., 85 F.3d 227, 229 (5th Cir. 1996) (inability to perform heavy lifting does not substantially limit major life activities of lifting and working); Aucutt v. Six Flags Over Mid-Am., Inc., 85 F.3d 1311, 1319 (8th Cir. 1996); Thompson v. KN Energy, Inc., 177 F. Supp.2d 1238, 1249-52 (35-pound lifting restriction not sufficient to establish disability); Greene v. United Parcel Serv., Inc., 125 F. Supp.2d 517, 521 (M.D. 2000).

Plaintiff contends that defendant mistakenly believed that a non-limiting impairment – his shoulder injury – and subsequent lifting restrictions substantially limited the major life activities of lifting and working. Plaintiff cites defendant's refusal to reinstate him as evidence that it believed he could not lift or work.

When based on a physician's recommendation, however, defendant's refusal does not evidence defendant's belief that he was substantially limited in a major life activity. See Sink, 147 F. Supp.2d at 1095. Furthermore, the record reveals that according to the physical therapist's evaluation, defendant knew that plaintiff was capable of heavy labor. Plaintiff has not set forth a prima facie case whether defendant mistakenly believed the lifting restrictions substantially limit major life activities. The Court therefore sustains defendant's motion for summary judgment on plaintiff's disability and accommodation claims.

## IV.    Retaliation

### A.    ADA

Defendant argues that it is entitled to summary judgment on plaintiff's ADA retaliation claim because (1) his claim is contrary to his sworn testimony; (2) he cannot establish that he engaged in protected activity; (3) he cannot show a causal connection between any protected activity and the termination of his employment; and (4) defendant had a legitimate, non-retaliatory reason for its employment actions and plaintiff cannot demonstrate that these reasons were pretextual. Plaintiff alleges that he engaged in protected opposition to discrimination when he filed two grievances. Defendant argues that absent specific allegations of unlawful discrimination, a grievance does not constitute protected activity for purposes of an ADA retaliation claim.

When analyzing an ADA retaliatory discharge claim, the Tenth Circuit applies the familiar burden-shifting approach set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See Butler v. City of Prairie Village, Kan., 172 F.3d 736, 747 (10th Cir. 1999). To establish a prima facie case of retaliatory discharge under the ADA, plaintiff must show that (1) he engaged in protected activity

or protected opposition to discrimination; (2) he subsequently suffered adverse action by the employer; and (3) a casual connection connects the protected activity and the adverse employment action.  See Stover v. Martinez, 382 F.3d 1064, 1071 (10th Cir. 2004).

The ADA prohibits retaliation against any individual who has asserted a right under the ADA:

No person shall discriminate against any individual because such individual opposed any act or practice made unlawful by this chapter or because such individual  made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter.

42 U.S.C. § 12203(a).

In unpublished cases, the Tenth Circuit has found that when a grievance or other activity does not allege discrimination, it does not constitute either protected activity or protected opposition.  See Hounton v. Gallup Indep. Co., 113 Fed. Appx. 329, 334 (10th Cir. 2004) (filing of police report not protected activity when report does not refer to discriminatory activity); Anderson v. Acad. Sch. Dist. 20, 122 Fed. Appx. 912 (10th Cir. 2004) (grievance did not allege mistreatment based on race); Robbins v. Jefferson County Sch. Dist. R-1, 186 F.3d 1253 (10th Cir. 1999) (testimony in arbitration hearing not protected activity when it did not concern discrimination), abrogated on other grounds; Allen v. Denver Pub. Sch. Bd., 928 F.2d 978, 985 (10th Cir. 1991) (grievance which did not allege discrimination not protected activity), overruled on other grounds by Kendrick v. Penske Transp. Servs., Inc., 220 F.3d 1220 (10th Cir. 2000); see also Moore v. United Parcel Serv., Inc., 150 Fed. Appx. 315 (5th Cir. 2005) (grievance which alleged violation of agreement with union but not race discrimination not protected activity); Tiedeman v. Neb. Dep't of Corrs., 144 Fed. Appx. 565 (8th Cir. 2005) (grievance about pay rate based on union contract, not sex discrimination, not protected activity).  Here, plaintiff's grievances focus on a

31

contract complaint – alleged violations of the CBA.  His first grievance asserts that defendant violated Article 20 of the CBA by not allowing him to return to work.  His second grievance claims that defendant interfered with the third doctor procedure (an act expressly prohibited by Article 20 of the CBA) which then rendered an unfair result.  Plaintiff cites no evidence that he filed his grievances because he believed that defendant had discriminated against him under the ADA.  In fact, neither of plaintiff's grievances reference discrimination of any kind, and the Court therefore concludes that plaintiff did not engage in protected opposition to discrimination.[7]

Defendant does not dispute that its refusal to reinstate plaintiff's employment may constitute an adverse employment action.  Defendant contends, however, that plaintiff cannot show a causal connection between his alleged protected opposition to discrimination and its refusal to return him to work.  Specifically, defendant argues that it refusal to reinstate occurred before plaintiff filed his grievances.  Plaintiff does not address this specific argument, but contends that defendant's interference with and manipulation of the medical evaluation, plus its open admission that it did not initiate the 10-step ADA compliance procedure, serves as evidence of pretext and retaliatory animus.

Here, defendant first decided not to return plaintiff to work in December of 2003 – after Dr. Stechschulte found that plaintiff could not perform the essential functions of the package car driver position.  Plaintiff challenged Dr. Stechschulte's opinion in February of 2004, with Dr. Poppa's opinion.  Defendant's company doctor rendered a third opinion on February 9, 2004, and defendant did not permit plaintiff to

---

[7]        It is undisputed that before October of 2004, defendant had no knowledge that plaintiff had filed his EEOC intake questionnaire.  The EEOC filing cannot be the basis for plaintiff's retaliation claim, and plaintiff does not assert any such argument.

return to work.  The next day, plaintiff filed his first grievance.  Defendant's refusal to return plaintiff to work occurred before plaintiff filed his first grievance.  Standing alone, the fact that defendant continued to refuse to permit plaintiff to return to work is insufficient to establish a causal connection between plaintiff's grievance and defendant's action.  Sink v. Wal-Mart Stores, Inc., 147 F. Supp.2d 1085, 1097 (D. Kan. 2001); see also Craft v. Yellow Freight Sys., Inc., No. 97-1029, 1998 WL 72783, at *3 (10th Cir. Feb. 23, 1998) (where defendant continued to refuse to permit plaintiff to return to work after EEOC charge, no causal connection because defendant initiated adverse action before plaintiff filed charge).

Plaintiff has not established either the first or third prongs of retaliatory discharge.  The Court finds that plaintiff has not set forth a prima facie case of retaliation under the ADA.  Defendant is entitled to summary judgment on this claim.

**B.** **Workers' Compensation**

Defendant argues that plaintiff cannot establish a prima facie case of retaliatory discharge because he cannot show a causal connection between the filing of his claim for workers' compensation benefits and defendant's decision not to reinstate him to the package car driver position.  Defendant also argues that it had a legitimate, non-retaliatory reason for its action and that plaintiff cannot show that its reason was pretextual.

To set forth a prima facie case of retaliatory discharge for filing a workers' compensation claim under Kansas law, plaintiff must show that (1) he filed a claim for workers compensation benefits or sustained an injury for which he might assert a future claim for such benefits; (2) defendant knew of the claim or injury; (3) defendant terminated plaintiff's employment; and (4) a casual connection connects the protected activity and the termination of plaintiff's employment.  The prima facie case in not an onerous

33

burden under the <u>McDonnell Douglas</u> burden-shifting analysis.  <u>Robinson v. Wilson Concrete Co.</u>, 913 F. Supp. 1476, 1483 (D. Kan. 1996).

Defendant does not dispute that plaintiff can establish the first three elements.  Defendant asserts that plaintiff shows no causal connection between these two events.  Defendant argues that plaintiff did not initially contest Dr. Stechschulte's restrictions, and that the ultimate refusal to reinstate occurred eights months after he first sustained injury.  Plaintiff contends that temporal proximity between his injury and the decision not to reinstate him is sufficient to establish this element.  Plaintiff also argues that UPS employees made statements to him in attempt to intimidate him from filing such claims.

Temporal proximity between a workplace injury and an adverse employment action may be persuasive evidence of retaliation.  <u>White v. Tomasic</u>, 31 Kan. App.2d 597, 602, 69 P.3d 208, 212 (2003) (quoting <u>Gertsch v. Central Electropolishing Co.</u>, 29 Kan. App.2d 405, 409, 26 P.3d 87 (2001)).  Unless the employer's adverse action is closely connected in time to the protected conduct, plaintiff must produce additional evidence to show a causal connection.  <u>Anderson v. Coors Brewing Co.</u>, 181 F.3d 1171, 1179 (10th Cir. 1999).  The Tenth Circuit has found that a six-week period between protected activity and adverse action may be sufficient, standing alone, to show causation, but a three-month period, standing alone, is insufficient.  <u>MacKenzie</u>, 414 F.3d at 1280 (citing <u>Meiners v. Univ. of Kan.</u>, 359 F.3d 1222, 1231 (10th Cir. 2004)).

Here, plaintiff sustained injury on October 6, 2003.  Two months later, on December 4, 2003, Dr. Stechschulte imposed permanent lifting restrictions and defendant concluded that plaintiff could not return to work.  Plaintiff's burden is not an onerous one, and he has set forth sufficient evidence to raise an inference of a causal connection.

34

Under McDonnell Douglas, once plaintiff establishes a prima facie case, the burden shifts to defendant to articulate a legitimate, non-retaliatory reason for its actions.  See Bausman v. Interstate Brands Corp., 252 F.3d 1111, 1116 (10th Cir. 2001).  If defendant articulates a facially legitimate reason, the burden shifts back to plaintiff to present evidence that defendant's proffered reason is pretextual, that is, "unworthy of belief."  Id. at 1120.  Here, defendant asserts that it did not reinstate plaintiff's employment because Dr. Stechschulte's written medical evaluation showed that plaintiff could not perform the essential functions of the package car driver position.  If true, this reason constitutes a legitimate non-retaliatory reason.

To survive summary judgment, plaintiff must produce evidence that defendant's stated reason for not reinstating him was merely pretextual.  A plaintiff may show pretext "either directly by persuading the court that a discriminatory reason more likely [than not] motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence."  Tex. Dept. of Cmty. Affairs v. Burdine, 450 U.S. 248, 256 (1981).  While close temporal proximity may establish the causal connection element of a prima facie case, it is generally not sufficient to raise a genuine issue of pretext.  See Annett v. Univ. of Kan., 371 F.3d 1233 (10th Cir. 2004); Pastran v. K-Mart Corp., 210 F.3d 1201 (10th Cir. 2000); Vigil v. Colo. Dep't of Higher Educ., 185 F.3d 876, 1999 WL 407479 (10th Cir. June 21, 1999).  When evaluating pretext, the relevant inquiry is not whether the employer's proffered reasons were wise, fair or correct, but whether the employer honestly believed those reasons and acted in good faith upon those beliefs.  Stover, 382 F.3d at 1076; Bullington v. United Air Lines, Inc., 186 F.3d 1301, 1318 (10th Cir. 1999), overruled on other grounds by Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101 (2002).  Furthermore, the Court's role is to prevent unlawful employment practices, not to second guess employers'

business judgments.  Simms v. Oklahoma, 165 F.3d 1321, 1329 (10th Cir. 1999).

Here, plaintiff offers some additional evidence of retaliatory animus.  After plaintiff sustained injury, his supervisor asked him whether he "knew what work comp fraud was" and whether he knew "how much this was going to cost UPS."  Defendant characterizes these comments as "stray remarks" by an individual who was not a decision-maker.  The Court concludes, however, that this circumstantial evidence, if believed by a jury, may be sufficient to show that defendant was motivated by retaliatory intent. Defendant's motion for summary judgment is overruled on this claim.

In its discretion, the Court may exercise supplemental jurisdiction over a state law claim if it sufficiently relates to a pending claim over which the Court has original jurisdiction.  See 28 U.S.C. § 1367(a).  The Court need not exercise supplemental jurisdiction, however, and it may decline to do so if it has dismissed all claims over which it has original jurisdiction. 28 U.S.C. § 1367(c).  Here, the Court has dismissed all of plaintiff's federal claims.  Plaintiff's remaining claim relies on a state law cause of action for retaliatory discharge.  Plaintiff does not allege diversity of citizenship, and the Court is not inclined to exercise supplemental jurisdiction over plaintiff's remaining claim.

**IT IS THEREFORE ORDERED** that United Parcel Service, Inc.'s Motion To Dismiss And/Or For Summary Judgment (Doc. #89) filed November 10, 2005 be and hereby is **SUSTAINED in part**. The Court **SUSTAINS** defendant's motion on plaintiff's pattern and practice claim of discrimination and **DISMISSES** this claim.  The Court **SUSTAINS** defendant's motion for summary judgment on plaintiff's claims of disability discrimination, failure to accommodate and retaliation under the ADA.  The Court **DENIES** defendant's motion on plaintiff's retaliatory discharge claim under Kansas law.

**IT IS FURTHER ORDERED** that Plaintiff's Motion For Partial Summary Judgment (Doc. #94)

filed November 11, 2005 be and hereby is **SUSTAINED in part**.  While the Court **SUSTAINS** plaintiff's motion in that it finds that plaintiff timely filed a verified intake questionnaire and that the LMRA does not pre-empt his claims, the Court **DENIES** plaintiff's motion for partial summary judgment on his disability discrimination, failure to accommodate and pattern or practice discrimination claims.  The sole claim which remains for trial is plaintiff's claim that defendant refused to reinstate him because he filed a claim for workers' compensation benefits under Kansas law.

**IT IS FURTHER ORDERED** that plaintiff show cause in writing, **on or before February 10, 2006**, why the state law claim for retaliatory discharge should not be dismissed without prejudice for lack of subject matter jurisdiction.

Dated this 2nd day of February, 2006 at Kansas City, Kansas.

s/ Kathryn H. Vratil
KATHRYN H. VRATIL
United States District Judge